## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| Plaintiff, | ) | 8:12-CR-136-T-35AEP |
| v. | ) | |
| | ) | |
| WEYLIN O. RODRIGUEZ | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, Defendant, Weylin O. Rodriguez, by and through his undersigned counsel, and respectfully submits the following for the Court's consideration and to assist the Court in its determination of a reasonable sentence that is sufficient but not greater than necessary to comply with the directives of 18 U.S.C. §3553(a) and of *United States v. Booker*, 543 U.S. 20, 125 S. Ct. 738 (2005).

## BACKGROUND AND PROCEDURAL HISTORY

On April 12, 2012, Mr. Rodriguez was indicted for conspiracy[1] to sex trafficking of a minor in violation of 18 U.S.C. 1594(c) (Count 1); sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1) (Counts 2, 4-6); possession of a firearm in furtherance of a crime of violence (Counts 3, 7); transportation of minors

---

[1] Importantly, these statutes note "minors"; however, none of the alleged victims in this case are minors. A discrepancy that requires resolution.

to engage in sexual activity in violation of 18 U.S.C. § 2423 (Count 8); enticing a minor to engage in sexual activity in violation of 18 U.S.C. § 2422 (Count 9); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 10). (Doc. 35).[2] On March 15, 2012, Mr. Rodriguez appeared before the Court on a writ of habeas corpus ad prosequendum pursuant to the criminal complaint. (Docs. 1, 26, 27, 30). Mr. Rodriguez filed a waiver of personal appearance at arraignment and entered a written plea of not guilty. (Doc. 41). On October 22, 2012, a jury convicted Mr. Rodriguez on all counts except Count 3: possession of a firearm during a crime of violence. (Doc. 165).

On March 22, 2013, this Court sentenced Mr. Rodriguez to concurrent terms of life imprisonment on Counts 1, 3, 4, 5, 6, and 8; 240 months' imprisonment on Count 9; and 120 months' imprisonment on Count 10, all followed by a consecutive term of 60 months' imprisonment on Count 7. (Docs. 192, 194). On April 23, 2021, the Eleventh Circuit granted in part Mr. Rodriguez's application to file a second or successive motion to vacate, set aside, or correct sentence with respect to his challenge to his § 924(c) conviction on Count Seven. (Doc. 284).

---

[2] All references to Defendant's Presentence Investigation Report dated September 13, 2018, will be referred to herein as "PSR" followed by the appropriate page and/or paragraph number.

## PROBATION OFFICE GUIDELINES RANGE

Defendant's Presentence Investigation Report ("PSR"), prepared by the United States Probation office, set Mr. Rodriguez's sentencing guideline range of life imprisonment followed by a mandatory minimum term of five years' incarceration as to Count 7. (PSR ¶ 191). The calculation is based the following:

a. Base offense level of 34 per USSG § 2G1.3(a)(4). (PSR ¶ 106).

b. Two-level increase per USSG §§ 2G1.3(b)(2)(B) (victim unduly influenced to engage in prohibited sexual conduct). (PSR ¶ 107).

c. Two-level increase per USSG §§ 2G1.3(b)(3)(B) (offense involved the use of a computer or an interactive computer service to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor). (PSR ¶ 108).

d. Two-level upward adjustment per USSG § 2G1.3(b)(4)(A) (offense involved the commission of a sex act). (PSR ¶ 109).

e. Total offense level of 44. (PSR ¶¶ 114-125).

According to the PSR, Mr. Rodriguez's criminal history score is 16, which gives him a criminal history category of VI. (PSR ¶¶ 125, 142, 191.) With a total offense level of 44 and a criminal history category of VI, Mr. Rodriguez's advisory guideline range is life imprisonment, with a consecutive mandatory minimum sentence of 5 years for a violation of 18 U.S.C. § 924(c) per USSG § 2K2.4. (PSR ¶

126).   Because the Supreme Court subsequently found the residual clause of 18

U.S.C. § 924(c)(3)(B) to be unconstitutionally vague and retroactively applicable,

the Court should find the recommended mandatory minimum sentence of 5 years for

a violation of 18 U.S.C. § 924(c) per USSG § 2K2.4 to be improper in this case.

## **ARGUMENT**

As set forth above, Mr. Rodriguez is presently facing an advisory term of life

incarceration followed by a mandatory five years' incarceration.   Due to the nature

and circumstances of this case, however, as well as his history, characteristics, and

the need to avoid sentencing disparity, Mr. Rodriguez requests this Court alter his

sentence accordingly.

## I.    THE SENTENCING PARADIGM PER *BOOKER*, *GALL,* USSG AND 18 U.S.C. § 3553

The Guidelines are now but one of seven statutory factors to weigh when

formulating a sentence. See *United States v. Booker*, 125 S. Ct. 738 (2005); 18

U.S.C. § 3553. In *Booker*, the Supreme Court held that the mandatory manner in

which the Guidelines required courts to impose sentencing enhancements based on

facts found by the court, by a preponderance of the evidence, violated the Sixth

Amendment to the Constitution. The Supreme Court remedied the constitutional

violation by severing two statutory provisions, 18 U.S.C. § 3553(b)(1) (requiring

sentencing courts to impose a sentence within the applicable Guideline range), and

18 U.S.C. § 3742(e) (setting forth appellate standards of review for Guideline

4

issues), thereby making the Guidelines advisory. *Booker*, 125 S.Ct. at 756-57. Although the Guidelines are no longer mandatory, *Booker* makes clear that a sentencing court must still "consult [the] Guidelines and take them into account when sentencing." *Booker*, 125 S.Ct. at 767.

The United States Supreme Court further clarified the process of post *Booker* sentencing in *Gall v. United States*, 128 S.Ct. 586 (2007). In *Gall*, the Supreme Court set forth the sentencing paradigm as follows:

> As we explained in Rita, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*See Gall, supra* (internal citations omitted).

Thus, the Court must first establish the Sentence under the Guidelines and make appropriate factual findings. Next, the Court must allow the parties to argue for the sentence they deem appropriate. Finally, the Court must consider all of the

factors set forth in 18 U.S.C. § 3553(a), decide an appropriate sentence, and adequately explain the chosen sentence.

The Eleventh Circuit and other appellate courts have acknowledged that a sentence in the guideline range can produce an unreasonable result. *United States v. Hunt*, 459 F.3d. 1180, 1184 (11th Cir. 2006). There are however many instances where the guideline range will not yield a reasonable sentence. *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (en banc) (same); *United States v. Lazenby*, 439 F.3d 928 (8th Cir. 2006) (same).  As the First Circuit explained in *Jimenez-Beltre*:

> The guidelines are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges in particular cases. Some of the guidelines in particular cases were not reflections of existing practice but we're deliberate deviations or turned tendencies into absolutes. Others have been affected by directions from Congress. *Booker's* remedial solution makes it possible for courts to impose non-guidelines sentences that override the guidelines, subject only to ultimate requirement of reasonableness.

440 F.3d at 518 (internal citations omitted).

After calculation of the custody range, it is within the Court's discretion to sentence within that guideline or to impose a more lenient sentence than the applicable range, "provided the resulting sentence is reasonable in light of the § 3553(a) factors." *United States v. Shelton*, 400 F.3d 1325, 1334 (11th Cir. 2005); *See also Gall*, 128 S. Ct. at 595.

### A. The Imposition of a Mandatory Minimum Sentence Under § 924(c) in this Case Would be Unconstitutional under *Davis*[3]

In *United States v. Davis,* 139 S.Ct. 2319 (2019), the Supreme Court found the residual clause of 18 U.S.C. § 924(c)(3)(B) to be unconstitutionally vague.  (*See also In re Hammoud,* 931 F.3d 1032, 1036-37 (11th Cir. 2019) (applying *Davis* retroactively on collateral review).  Thus, any enhancement under § 924(c) in this case for sex trafficking under § 1591, which does not qualify as a crime of violence under the residual clause of § 924(c)(3)(B), would be unconstitutional error.

### B. Evidence Supports a Downward Variance Pursuant to 18 U.S.C. § 3553(a).

The facts and evidence when applied to 18 U.S.C. § 3553(a) factors support Mr. Rodriguez receiving a substantially lesser period of incarceration than advised by the sentencing guidelines calculations in his case. 18 U.S.C. § 3553(a) states, in relevant part, as follows:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>> (2) the need for the sentence imposed –
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[3] See also *Wooden v. United States*, 142 S. Ct. 1063 (2022).

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

8

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.[4]

(7) the need to provide restitution to any victims of the offense.

A review of these seven sentencing factors, which the court must consider pursuant to 18 U.S.C. § 3553(a), supports a finding that Mr. Rodriguez should not be sentenced to incarceration in federal prison for life plus five years, as recommended by the Guidelines.    Instead, Mr. Rodriguez should receive a substantially lesser sentence via a downward variance. As further discussed below, review of the facts of Mr. Rodriguez's case shows myriad compelling reasons for the court to grant Defendant's motion for a downward variance under the § 3553(a) factors.

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant 18 U.S.C. § 3553(A)(1)

The nature and circumstances of this case are outlined in the PSR but undersigned counsel has submitted numerous objections that will need to be resolved by this Court. It is to be noted that this Court had the benefit to see the evidence and hear the testimony of the alleged victims in this case. Thus, the Court is in a better position to know the facts of this case. In any event, undersigned counsel will rely

---

[4] Notably, in this case Mr. Rodriquez's sentence is nearly 300% more than his co-defendant.

9

on the evidence presented to the Court in presenting mitigation on Mr. Rodriguez's behalf.

The Government took the position that the alleged victims in this case were forced to engage in prostitution acts, brutalized, and held against their will. However, the evidence presented to this Court established this was the lifestyle (voluntary and simple prostitution) these alleged victims lived. In mitigation of his sentence, Mr. Rodriguez requests this Court to consider the following evidence that was presented, or omitted, during trial:

a. The undisputed evidence at trial was that there many occasions where the alleged victims engaged in voluntary prostitution when Mr. Rodriguez was not present, such as in North Carolina and South Carolina.

b. No physical and documented evidence was presented to establish that Mr. Rodriguez beat any of the alleged victim.

c. Mr. Rodriguez did not forcibly brand his prostitutes or any of these alleged victims with tattoos. Instead, the undisputed evidence presented at trial was that the females voluntarily had tattoos placed on themselves and they were not forced to do so.

d. Pria Gunn was already working as a prostitute prior to meeting Mr. Rodriguez and, thus, she was not forced by Mr. Rodriguez to do anything she was not

already doing or knew how to do. Also, both Gunn and/or Joye "enforced rules" of their own choosing and of their own free-will.

e.  The evidence presented at trial established that many instances in which the alleged victims voluntarily engaged in prostitution were for themselves and had nothing to do with Mr. Rodriguez.

f.  On November 25, 2010, E.F. and D.B. encountered Mr. Rodriguez. The testimony at trial was that D.B. explained to Mr. Rodriguez that they were hungry and wanted something to eat. Mr. Rodriguez offered the two girls something to eat and both of them voluntarily entered his vehicle occupied by other males. In fact, during this time, D.B. testified at trial that she did not see Mr. Rodriguez with a gun. However, E.F. testified that Mr. Rodriguez lifted his shirt and she saw he had a gun. There was never any testimony that Mr. Rodriguez threaten to harm the females if they did not get in the car with him.

g.  Once at Mr. Rodriguez's aunt's residence, D.B. and E.F. were given something to eat. Also, while at the residence, D.B. and E.F. voluntarily changed and put on make-up. They also checked their appearances before leaving the residence.

h.  D.B. had sex with whomever she chose, and her conduct was voluntary. Also, while in North Carolina, D.B. and Gunn engaged in voluntary prostitution at

their choosing and own free will and Mr. Rodriguez had nothing to do with their decisions.

i.  Additionally, D.B. would voluntarily leave Mr. Rodriguez's presence to go be with other people and Johns and would return to Mr. Rodriguez on her own free will.

j.  There was no corroborating evidence that Mr. Rodriguez provided ecstasy to D.B. and/or anyone else.

k.  Despite "now" saying they were forced to work as prostitutes and they were kidnapped and held against their wills, the evidence at trial clearly established that when given many opportunities to report to police any harm they suffered not one of the alleged victims did so.

l.  Any prostitution committed by B.W., an adult, was voluntary and of her own choosing. In fact, the evidence established that a business card was given to B.W. which contained photographs of women in scant/revealing clothing. At trial, B.W. and her mother indicated that they spoke to Mr. Rodriguez about modeling opportunities. Furthermore, both B.W. and her mother testified that she (B.W.) had taken steps to further her modeling career. However, such attempts could not be substantiated at trial.

m. After meeting B.W. at her residence, B.W. voluntarily entered Mr. Rodriguez's vehicle and was taken to a local apartment.

n.  Once at the apartment, B.W. took a shower, changed clothing, put on makeup voluntarily, and checked her appearance in the mirror. Also, B.W. volunteered to take photographs and agreed to their posting for various purposes.

o.  There was no corroborating evidence that B.W. could not leave the residence because Mr. Rodriguez had a key to one of the front door locks and he slept in the living room. The evidence at trial is contrary to this sentence as Mr. Rodriguez did not have a key, the door was not locked, and he did not sleep in the living room.

p.  In fact, when given many chances to leave the residence, B.W. never attempted to leave. Furthermore, the evidence at trial established that B.W. walked to the apartment complex pool with other females to take photographs. Also, many photographs depict B.W. enjoying herself and never evidencing any type of distress.

q.  C.G., allegedly, went to spend the weekend at her friend's house. Subsequently, unbeknownst to C.G.'s mother, an adult male obtained a local hotel room for the two of them.

r.  C.G. testified that the hotel that was obtained for her and her friend was "somewhere" off of Hillsborough Avenue. Clearly her testimony does not demonstrate the peril that she claims she was in while with Mr. Rodriguez.

s.  C.G. "conveniently" testified that she and her friend met Mr. Rodriguez at a "grill bar" in Ybor City. On the second night in Ybor City, C.G. became separated from her drunk friend and needed a ride home. C.G. testified that she just happened to bump into Mr. Rodriguez, again, and asked him for a ride home. Again, C.G.'s testimony is not consistent with the harm that she testified she suffered from Mr. Rodriguez.

t.  This Court will recall that the jury clearly rejected C.G.'s testimony that Mr. Rodriguez pointed a gun at her.

u.  In fact, the testimony at trial was that C.G. lied about her age and said she was 18.

v.  While C.G. was walking the strip in Orlando, Florida, numerous police passed by her, but she never sought any help. Also, Gunn testified that C.G. did at least one act of prostitution an act that C.G. never revealed to the Court or to the jury.

w.  There was no corroborating evidence that Mr. Rodriguez held anyone against their will or that he placed furniture against the wall to keep anyone from leaving/escaping.

x.  There was no corroborating evidence that Mr. Rodriguez pulled all the telephone cables out of the wall in the hotel room as the evidence at trial did not establish this.

14

y.   Despite alleging to have been kidnapped and in peril, when the Hispanic male picked up C.G. off the streets in Orlando, rather than summon the police or go to the police station, the Hispanic male—according to C.G.—drove her to his home in Apopka where she stayed for several hours. Also, the male gave C.G. or her mother $100. This was done, as suggested by the Government, as a Good Samaritan gesture but in reality this was probably for C.G.'s "services."

z.   The Government even tries to list Ca.G. as a victim in this case, but as this Court is aware Ca.G. never appeared at trial to testify and the Government abandoned any claim that she was an alleged victim. Therefore, Mr. Rodriguez was not able to face his accuser.

aa.  The undisputed evidence established that N.M. voluntarily worked as a prostitute and, thus, any prostitution committed by her was voluntary and of her own choosing as established by her subsequent arrest in this case for prostitution.

bb.  The evidence at trial also established that N.M. voluntarily choose to go with Mr. Rodriguez to Florida from North Carolina. N.M. testified that she or Mr. Rodriguez informed her mother that she would return to North Carolina by the end of the week. Interestingly, however, N.M. also testified that she did

not take any change of clothes with her on her trip to Florida with Mr. Rodriguez.

cc. In fact, the evidence at trial established that there were many opportunities for N.M. to leave the residence and Mr. Rodriguez's presence but she elected not to do so. This is even evidenced by N.M.'s traveling in a car with Joye to engage in prostitution instead of fleeing from Mr. Rodriguez. To compound matters, after being arrested and in the presence of numerous police officers, N.M. never reported that she was kidnapped or forcibly held against her will.

dd. The evidence established that during the prostitution act, both Joye and N.M. voluntarily removed their clothing to engage in prostitution with this "John" and Mr. Rodriguez was not present. However, the Government still maintains that this was Mr. Rodriguez's fault and he should get a life sentence.

ee. There was no evidence presented at trial to establish that R.R. was a victim of any criminal activity.

ff. Mr. Rodriguez reminds this Court that the Government charged him with possessing 77 rounds of .45 caliber ammunition found at the Limewood residence as they believed such belonged to him. However, at trial, the Government had to abandon this position after learning that such ammunition did not belong to him and he never possessed the ammunition.

gg. Finally, it should be noted that the alleged victims D.B. and C.G. testified how they had been victimized by Mr. Rodriguez and yet both laughed about this incident while testifying. Have they been victimized as they allege, warranting a life sentence? And knowing this, the Government still advocates that Mr. Rodriguez should receive a life sentence.

In sum, the evidence above establishes this is not a case in which Mr. Rodriguez has kidnapped and molested "children" and, ultimately, taken their lives, as the Government would ask one to believe. Although the jury found Mr. Rodriguez to be guilty of the charged offense conduct, Mr. Rodriguez requests this Court find that his conduct, when placed in proper context, is mitigated by the facts outlined above. Additionally, Mr. Rodriguez asks that this Court find that his instant conduct is on par with other defendants who have frequented the federal criminal system and who have received the average ten- to fifteen-year sentence. Here, a twenty-year sentence would be more than the average federal sentence rendered to the career offender and/or armed career criminal defendant and would be reasonable under the circumstances of this case.

### 2.  Mr. Rodriguez's Personal History and Characteristics

This Court should also look to Mr. Rodriguez's family background and difficult upbring in further consideration of substantial mitigating factors.  Mr. Rodriguez was born to Gina Rodriguez and Gerald Bethia, who two never married,

and is one child of six to Mr. Bethia, with all of whom Mr. Rodriguez is not acquainted. (PSR ¶169).

When Mr. Rodriguez was a child, his mother had worked as a prostitute and was addicted to crack cocaine.  (PSR ¶162). Mr. Rodriguez lived with his maternal grandmother for a period of time in New York and later in Orlando, Florida (PSR ¶164).  After his grandmother's death, Mr. Rodriguez returned to New York to live with his mother.  The two later relocated to Charlotte/Concord, North Carolina. *Id.* Mr. Rodriguez lived with his mother until he was forced to leave and live on his own at 16 years of age due to his mother's addiction to crack cocaine. *Id.*

Understanding that people are often victims of their circumstances, it is not surprising that Mr. Rodriguez has been convicted of a prostitution-related offense similar to the culture and lifestyle in which he was raised.  (PSR ¶ 162). Put differently, Mr. Rodriguez was all but bound to suffer the consequences of having been born into the cycle of the sex industry at an early age. (PSR ¶¶162 & 167).

Mr. Rodriguez candidly admits a turbulent and unsafe childhood, growing up on the streets, witnessing the distribution of drugs, and experiencing the sex trade industry at an early age. (PSR ¶167).  In fact, Mr. Rodriguez's parents met through the sex trade industry, as his mother was a prostitute, and his father was a pimp who was also connected to organized crime. *Id.*

At the age of 13, Mr. Rodriguez's mother would use him as a bodyguard while working as a prostitute and take him along with her on dates. *Id*. Thankfully, Mr. Rodriguez never witnessed his mother having sex, but does recall instances of his mother emerging nude from various bedrooms with money or a wallet that he would have to go through to get his mother's money. *Id.*

Mr. Rodriguez is a victim of circumstances: his rearing, the culture in which he was raised, and the learned behavior to which he was exposed. *See Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) (stating where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse). In short, all of these negatives amount to risk factors that clearly exacerbated Mr. Rodriguez being in the predicament in which he currently finds himself. *See* DX 1 - Sociological Evaluation by Wesley G. Jennings, Ph.D.

In consideration of the foregoing, this Court should find that a downward variance to the minimum prison sentence of twenty years would be a reasonable and appropriate sentence.

### 3. Sentencing Disparity

A life sentence for Mr. Rodriguez will only constitute sentencing disparity among individuals convicted of similar offenses with like criminal histories. Simply stated, if this Court determines Mr. Rodriguez should get a life sentence, then other

defendants with similar offenses (or worse) and like criminal histories (or worse) should also receive life sentences. As this Court is aware, there are innumerable defendants with criminal histories equal to or worse than Mr. Rodriguez who frequent the federal criminal justice system, but never receive a life sentence.

Sentencing Mr. Rodriguez to a twenty years' incarceration would be reasonable, appropriate, and avoid any potential sentencing disparity among defendants similarly situated. *See* 18 U.S.C. § 3553(a)(6); *United States v. Martin*, 455 F.3d 1227, 1241 (11th Cir. 2006) (stating § 3553(a)(6) confines such consideration to the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct).

### 4. *The Need For The Sentence Imposed: The Seriousness Of The Offense, Promoting Respect For The Law, and Just Punishment (18 U.S.C. § 3553 (A)(2)(A))*

Promoting respect for the law means more than merely doling out harsh punishment. As noted by the Supreme Court in *Gall*, an overly harsh sentence "may work to promote not respect, but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." 128 S.Ct at 599.

Mr. Rodriguez is currently thirty-nine years of age. (PSR, p. 4) Consequently, a sentence of twenty years will result in him being approximately sixty years of age at the end of his sentence. Generally speaking, as people age, their criminal

20

tendencies decrease. A twenty year sentence would remove Mr. Rodriguez from the community for a substantial period of time to both protect the community and deter such future conduct by Mr. Rodriguez and others.

Thus, a sentence of twenty years would be reasonable and no greater than necessary to accomplish the ultimate aims of the Section 3553(a) factors.

### 5. Deterrence And The Need To Protect Society (18 U.S.C. § 3553 (A)(2)(B) & (C))

There are two types of deterrence for the Court to consider - general deterrence, i.e., deterrence of others, and specific deterrence, i.e., deterrence of Mr. Rodriguez. First, it must be noted that scientific studies regarding deterrence suggest that it is the fact of a sentence, not its length, which has a deterrent impact. Kleck, et al., *"The Missing Link in General Deterrence Theory",* 43 Criminology 623,653 (2005).

There is no evidence that lengthy prison sentences deter others, 18 U.S.C. § 3553(a)(2)(B) or have any crime control effect. *See* Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Justice: A Review of Research 28-29 (2006); Ilyana Kuziemko & Steven D. Levitt, An Empirical Analysis of Imprisoning Drug Offenders, 88 J. of Pub. Econ. 2043, 2043 (2004) ("it is unlikely that the dramatic increase in drug imprisonment was cost-effective"). Because drug offenses are driven by user demand, drug crime is not prevented by incarceration of low-skill drug traffickers, who are readily replaced in the drug market. *See* USSC, Cocaine

and Federal Sentencing Policy 68 (1995) (DEA and FBI reported dealers were immediately replaced). Indeed, the supply and consumption of methamphetamine have steadily increased since 2000 despite the increased penalties. *See* What America's Users Spend on Illegal Drugs, Office of National Drug Control Policy fig. FW.8 (2012).

This would seem particularly true in Mr. Rodriguez's case, who would feel punished not just by incarceration but also by the social and familial embarrassment stemming from having his community and family find out the consequences of his actions. The Court can be assured that Mr. Rodriguez has learned a valuable lesson.

## <u>CONCLUSION</u>

Ultimately, Mr. Rodriguez was sentenced under a bundle package. In *United States v. Smith*, 103 F.3d 531, 1996 WL 729124 (7th Cir. 1996), the Seventh Circuit concluded that, in a § 2255 proceeding, the district court has the authority to restructure a defendant's entire sentence even when the prisoner's petition attacks the validity of just one of the counts of conviction.

Central to the decision in *Smith* was the "sentencing package" concept. A sentencing package is "the bottom line, the total number of years (or under the guidelines, months) which effectuates a sentencing plan." *Id*. at *2. The image of the package reflects the likelihood that in sentencing a defendant who is convicted of more than one count of a multicount indictment, the district judge imposes an overall

22

punishment which takes into account the nature of the crime, certain characteristics of the criminal, and the interdependence of the individual counts. *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir.), cert. denied, 484 U.S. 956, 98 L. Ed. 2d 376, 108 S. Ct. 351 (1987); see also *United States v. Pimienta-Redondo*, 874 F.2d 9, 14 (1st Cir.), cert. denied, 493 U.S. 890 (1989).

As will happen with any type of package, a sentencing package may become "unbundled." When a sentencing package is unbundled, such as when part of a sentence is vacated, we have held that, in order to effectuate its original sentencing intent, the district court may "rebundle" the package by resentencing the defendant. See, e.g., *Shue*, 825 F.2d at 1114.

The sentencing guideline range, the nature of the offense, Mr. Rodriguez's history and characteristics and his full cooperation all indicate that a sentence lower than the guideline range is a reasonable sentence in this case and indicate that this is the prototypical case for a wholly new sentence. A guideline sentence would be too harsh considering the circumstances of this case. A below guideline range sentence is a reasonable sentence that is sufficient but not greater than necessary to comply with the directives of 18 U.S.C. § 3553(a) and of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). This sentence would adequately serve the sentencing purposes of Section 3553(a) and effect the minimum punishment needed to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public,

and rehabilitation of the defendant. *See* 18 U.S.C. § 3553(a) (court should impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" subsection (a)).

Respectfully submitted this 10th day of August 2022.

/s/ Robert L. Sirianni, Jr.
Robert L. Sirianni, Jr., Esquire
BROWNSTONE, P.A.
PO BOX 2047
Winter Park, FL 32790
Telephone: (407) 388.1900
Facsimile: (407) 622-1511
robertsirianni@brownstonelaw.com
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day of August 10, 2022, electronically filed the foregoing Defendant's Sentencing Memorandum with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing upon all counsel of record.

/s/ Robert L. Sirianni, Jr.
Robert L. Sirianni, Jr., Esquire

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document complies with the typeface requirements of LR 5.1C and the type of style requirements of LR 5.1C, specifically Times New Roman 14 point.

/s/ Robert L. Sirianni, Jr.
Robert L. Sirianni, Jr., Esquire

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 23, 2021

Robert L. Sirianni Jr.
Brownstone, PA
PO BOX 2047
WINTER PARK, FL 32790-2047

Appeal Number:  21-11128-D
Case Style:  In re: Weylin Rodriguez
District Court Docket No:  8:12-cr-00136-MSS-AEP

The enclosed order has been entered. No further action will be taken in this matter.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Scott O'Neal, D
Phone #: (404) 335-6189

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-11128-D
_____

IN RE: WEYLIN RODRIGUEZ,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)
_____

Before:  BRANCH, BRASHER, and HULL, Circuit Judges.

B Y  T H E  COURT:

     Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Weylin Rodriguez has filed an

application seeking an order authorizing the district court to consider a successive motion to vacate,

set aside, or correct his federal sentence under 28 U.S.C. § 2255. Such authorization may be

granted only if this Court certifies that the successive motion contains a claim involving:

     (1) newly discovered evidence that, if proven and viewed in light of the
evidence as a whole, would be sufficient to establish by clear and convincing
evidence that no reasonable factfinder would have found the movant guilty of the
offense; or

     (2) a new rule of constitutional law, made retroactive to cases on collateral
review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive

application only if it determines that the application makes a prima facie showing that the

application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v.*

1

*Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

## I. BACKGROUND

Rodriguez ran a prostitution ring and recruited young women, including girls as young as fourteen, using his company, GMB Entertainment, under the guise of helping them attain modeling careers. Rodriguez physically, emotionally, and sexually abused the girls and women in order to control them. He also regularly carried a firearm, even sleeping with it under his pillow.

In 2013, a jury convicted Rodriguez of one count of conspiracy to engage in sex trafficking of minors and adults by means of force, threats, fraud, and/or coercion, in violation of 18 U.S.C. §§ 1591(a), 1594(c) (Count One); three counts of sex trafficking a minor by means of force, threats, fraud, and/or coercion, in violation of § 1591(a), (b), and 18 U.S.C. § 2 (Counts Two, Four, and Five); one count of sex trafficking three adults by means of force, threats, fraud, and/or coercion, in violation of § 1591(a), (b), and § 2 (Count Six); one count of possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A), 2 (Count Seven); one count of transporting minors with the intent to engage them in prostitution, in violation of 18 U.S.C. §§ 2423(a), 2 (Count Eight); one count of enticing an individual to travel in interstate commerce for prostitution, in violation of 18 U.S.C. §§ 2422(a), 2 (Count Nine); and one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g), 924(a)(2) (Count Ten). Notably, the indictment alleged that the § 924(c) firearm offense in Count Seven related only to the offense of sex trafficking adults charged in Count Six.[1]

---

[1] Although Count Seven stated that the § 924(c) offense was predicated on "sex trafficking of a minor or by force, fraud and coercion, as charged in Count Six of this indictment," Count Six

Rodriguez was sentenced to concurrent terms of life imprisonment on Counts One, Two, Four, Five, Six, and Eight, a concurrent 240-month term of imprisonment on Count Nine, a concurrent 120-month term on Count Ten, all followed by a consecutive 60-month term for the § 924(c) offense in Count Seven.

On direct appeal, Rodriguez raised several claims, including whether there was sufficient evidence to support his § 924(c) firearm conviction in Count Seven. *See United States v. Rodriguez*, 589 F. App'x 513 (11th Cir. 2015). Rodriguez did not, however, raise a claim that sex trafficking adults in violation of 18 U.S.C. § 1591(a) did not constitute a crime of violence under § 924(c). *See id.* This Court affirmed Rodriguez's convictions and sentences. *Id.*

## II.  INITIAL § 2255 MOTION IN 2016

In 2016, Rodriguez filed a motion to vacate under 28 U.S.C. § 2255, raising claims that his trial counsel was ineffective by failing to conduct pretrial investigation or adequately prepare for trial, failing to negotiate a plea deal, failing to mount a credible defense at trial, and failing to counsel Rodriguez appropriately at sentencing. Rodriguez did not raise any claim as to whether his sex trafficking offense as charged in Count Six constituted a crime of violence for purposes of his § 924(c) firearm conviction in Count Seven. The district court denied Rodriguez's ineffective assistance claims on the merits in December 2018. We denied him a certificate of appealability, and in October 2020, the Supreme Court denied his petition for a writ of certiorari.

## III. SUCCESSIVE APPLICATION IN 2020

In June 2020, while his certiorari petition was pending, Rodriguez sought our authorization to file a successive § 2255 motion in the wake of *United States v. Davis*, 139 S. Ct. 2319 (2019). He

---

charged sex trafficking of adults.

3

argued, as relevant, that he was actually innocent of his § 924(c) conviction because § 924(c)(3)(B)'s residual clause was unconstitutionally vague and his predicate offense did not qualify as a crime of violence under § 924(c)(3)(A)'s elements clause.  We denied his application without prejudice as premature in July 2020.

## IV.  CURRENT SUCCESSIVE APPLICATION IN 2021

In April 2021, Rodriguez filed his present, counseled application raising three claims, two challenging his § 924(c) conviction on Count Seven and a third challenging his sex trafficking conviction on Count Six.

**A.     Section 924(c) Conviction on Count Seven**

First, Rodriguez asserts that he is actually innocent of his § 924(c) conviction because the Supreme Court held that § 924(c)(3)(B)'s residual clause was unconstitutionally vague in *Davis*.  He states that this claim relies on a new rule of constitutional law.

On June 24, 2019, the Supreme Court in *Davis* extended its holdings in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) to § 924(c) and held that § 924(c)(3)(B)'s residual clause is unconstitutionally vague.  *Davis*, 139 S. Ct. at 2324-25, 2336.   In *In re Hammoud*, we resolved several preliminary issues with respect to successive applications involving proposed *Davis* claims. 931 F.3d 1032, 1036-37 (11th Cir. 2019).  First, we held that *Davis*, like *Johnson*, announced a new rule of constitutional law within the meaning of § 2255(h)(2).  *Id.* at 1038.   Second, we held that *Davis*'s rule applied retroactively to cases on collateral review. *Id.* at 1038-39.

Rodriguez's § 924(c) conviction in Count Seven was predicated on his conviction in Count

4

Six for sex trafficking an adult under § 1591(a), (b). *See* 28 U.S.C. §§ 2244(b)(3)(C), 2255(h)(2).[2] There is no binding precedent from the Supreme Court or our Court as to whether that that offense in Count Six qualifies as a crime of violence under the elements clause of § 924(c)(3)(A). Thus, we conclude that Rodriguez has made a *prima facie* showing that his *Davis* claim satisfies the statutory criteria of § 2255(h)(2) on the basis that his § 924(c) conviction may be unconstitutional under *Davis. See* 28 U.S.C. § 2255(h)(2); *Davis*, 139 S. Ct. at 2324-25, 2336. However, in the district court, Rodriguez will have the burden to establish that he was convicted solely under the now-invalid residual clause of § 924(c)(3)(B). *See Beeman v. United States*, 871 F.3d 1215,1221-22 (11th Cir. 2017).

Additionally, we note that when this Court authorizes a federal prisoner to file a successive § 2255 motion in the district court, that authorization is a threshold determination and narrowly circumscribed. *See In re Moore*, 830 F.3d 1268, 1271 (11th Cir. 2016). The successive motion does not stand in the place of a first § 2255 motion, allowing the movant to raise any claim that would have been cognizable in an original § 2255 proceeding. *See Jordan*, 485 F.3d at 1357. Rather, the claims raised in the successive § 2255 motion must still meet the requirements of § 2255(h). *See Randolph v. United States*, 904 F.3d 962, 964 (11th Cir. 2018). Further, our threshold determination that an applicant has made a *prima facie* showing that he has met the statutory criteria of § 2255(h), thus warranting our authorization to file a second or successive § 2255 motion, does not conclusively resolve that issue. *See In re Moore*, 830 F.3d at 1271; *Jordan*, 485 F.3d at 1357-58. Once the prisoner files his authorized § 2255 motion in the district court, "the district court not only can, but must, determine for itself whether those requirements are met." *Jordan*, 485 F.3d at 1357.

"When we issue an order authorizing a habeas petitioner to file a second or successive § 2255 motion,

---

[2] Rodriguez's *Davis* claim is not barred by *In re Baptiste* because we denied his most recent successive application, where he raised his *Davis* claim for the first time, without prejudice as premature. *See In re Baptiste*, 828 F.3d 1337, 1339-40 (11th Cir. 2016).

'the district is to decide the § 2255(h) issues fresh, or in the legal vernacular, *de novo*.'"  *Randolph*, 904 F.3d at 965 (quoting *In re Moore*, 830 F.3d at 1271, and citing *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013), and *Jordan*, 485 F.3d at 1357).  "Our 'first hard look' at whether the § 2255(h) requirements actually have been met will come, if at all, on appeal from the district court's decision."  *In re Moore*, 830 F.3d at 1271 (internal quotation marks and alterations omitted); *see also In re Moss*, 703 F.3d at 1303.

Finally, should the district court conclude that Rodriguez "has established the statutory requirements for filing a second or successive motion, it shall proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise," such as waiver or procedural default.  *In re Cannon*, 931 F.3d at 1243 (discussing the burden of proof as to the merits of successive § 2255 claims); *In re Moss*, 703 F.3d at 1303 (same); *see also Parker v. United States*, ___ F.3d ___, 2021 WL 1259432 (11th Cir. Apr. 6, 2021) (holding initial § 2255 movant procedurally defaulted his *Davis* claim by not raising it in his original criminal proceedings or on direct appeal).  At this preliminary stage, we offer no opinion as to whether these, or any other defense, might bar or defeat Rodriguez's *Davis* claim as to Count Seven.  We leave those issues for the district court to resolve in the first instance.

As for his second § 924(c) claim, Rodriguez contends that his Sixth Amendment rights were violated by a "structural error," citing *Rosemond v. United States*, 572 U.S. 65 (2014), and *Steiner v. United States*, 940 F.3d 1282 (11th Cir. 2019), in support.  He contends that, under *Rosemond*, he was not advised that aiding and abetting the commission of a § 924(c) offense required a showing of "advance knowledge" that the participants planned to use a firearm, which denied him his right to mount his preferred defense.   Rodriguez asserts that he is entitled to relief under *Rosemond* because the decision was not available at the time he was sentenced.   Rodriguez also contends, relying on *Rosemond*, that the district court erred by failing to instruct his jury that he was required to have advance knowledge of a plan to use a firearm.

Rodriguez has not made a *prima facie* showing that his *Rosemond* claim satisfies

6

§ 2255(h)'s criteria. *Rosemond* only clarified the scope of aiding and abetting liability under § 924(c) and did not announce any new constitutional rule. *See Rosemond*, 572 U.S. at 67. And although we concluded in *Steiner* that *Rosemond* applies retroactively on collateral review, *Steiner* involved an initial § 2255 motion, and the Supreme Court itself has not made *Rosemond* retroactive to cases on collateral review, as required by § 2255(h)(2). *See Tyler*, 533 U.S. at 661-62. In any event, *Rosemond* was decided in 2014 and is therefore not "new" within the meaning of the statute, as it was available when Rodriguez filed his original § 2255 motion in 2016. *See* 28 U.S.C. § 2255(h)(2).

## B.    Sex Trafficking Conviction on Count Six

Rodriguez asserts that he is actually innocent of his sex trafficking conviction on Count Six because 18 U.S.C. § 1591 is unconstitutional, since it does not define the terms "sexual activity, any sex act, or commercial sex act." He states that this claim relies neither on a new rule of constitutional law nor newly discovered evidence, but he contends that he may indirectly challenge his § 1591 conviction now because it was the predicate for his § 924(c) conviction and the two convictions are thus "a combination crime."

As Rodriguez's claim that he is actually innocent of his § 1591 conviction relies neither on a new rule of constitutional law nor newly discovered evidence, it does not satisfy the statutory criteria in § 2255(h). *See id.* § 2255(h). There is no merit to Rodriguez's argument that we may authorize him to bring this constitutional challenge to his sex trafficking conviction in a successive § 2255 motion merely because it was also the predicate offense to his § 924(c) conviction.

## III. CONCLUSION

Accordingly, because Rodriguez's proposed *Davis* claim meets the statutory criteria in § 2255(h), his application is GRANTED only as to his *Davis* claim challenging his § 924(c)

conviction on Count Seven.  Because his remaining claims do not satisfy the statutory criteria, his application is DENIED as to those claims.